UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRYAN CROFT, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 2:04CV00051 ERW |
| ) | |
| DR. ROBERT HAMPTON, et al., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court upon Plaintiff Croft's Motion for Summary Judgment [doc. #74], Defendants Hampton, Tanner, Patton, and Correctional Medical Services' Joint Motion for Summary Judgment [doc. #77], and Defendants' Motion to Strike Affidavits of Plaintiff, James Bailey and Olen Robinson [doc. #80].

**I. BACKGROUND FACTS**[1]

Plaintiff, an inmate at the Northeast Correctional Center, located in Bowling Green, MO, brings suit against Defendant Hampton, a resident of the State of Texas, Defendant Tanner, a resident of the State of Illinois, Defendant Patton, a resident of the State of Missouri, and Defendant Correctional Medical Services (CMS), a Missouri Corporation, for violations of his Eighth and Fourteenth Amendment rights under the United States Constitution. *Pl. Complaint* at ¶¶23 & 30. Plaintiff alleges that they were deliberately indifferent to his serious medical needs, thereby violating his right to adequate medical care. *Id.*

---

[1]The Court's recitation of the facts is taken from the Plaintiff and Defendant's statements of Uncontroverted Facts, and their responses. The Court has noted where the parties disagree on the facts.

On August 9, 2002, the Plaintiff was playing softball at the Northeast Correctional Center, where he suffered an injury to his right leg. The Institutional recreation officers that were present during the baseball game, contacted Correctional Medical Services (CMS) to respond to the Plaintiff's medical emergency. Defendants Tanner and Patten responded to the call for medical assistance and arrived at the scene of Plaintiff's injury; the parties disagree on how Defendants Tanner and Patten proceeded after arriving at the scene. The Plaintiff alleges that Defendants Tanner and Patten were trained by Defendant CMS in the proper procedure and protocol for splinting and stabilizing a broken leg, including carrying a splint to the scene of a leg injury, and that they failed to follow that protocol. Plaintiff also alleges that they did not splint the leg, but rather attempted to move the Plaintiff without immobilizing the leg in any manner, which resulted in his leg falling in an unnatural dangling motion where the bone was broken, causing the Plaintiff severe pain. Defendants Tanner and Patton deny they were specifically trained to carry a splint with them, they further deny trying to lift the Plaintiff without supporting his leg, but assert that they rolled the Plaintiff on to a backboard prior to lifting and transporting the Plaintiff. Defendants Tanner and Patton admit that they were trained by CMS regarding the proper standard of care in treating a leg injury. They claim that although they did not use a leg splint prior to transporting the Plaintiff to the infirmary, Defendant Patton did immobilize the leg with her hands.

Upon returning to the CMS infirmary, Defendants Tanner and Patton paged Defendant Hampton, who was the on-call physician. Defendant Hampton instructed Defendants Tanner and Patton to call an ambulance to transport the Plaintiff for emergency treatment. Plaintiff further alleges that he was required to wait one and a half hours in the CMS infirmary before an ambulance arrived. During the time the Plaintiff was in the CMS infirmary he was not given any

narcotic pain medication. When emergency services arrived at the CMS infirmary, the Plaintiff was given morphine and his leg was splinted, prior to being transported to Pike County Memorial Hospital.

Upon arriving at Pike County Hospital, the emergency room Physician, Dr. Weiland, ordered an x-ray of the Plaintiff's leg, which showed multiple fractures (a comminuted right leg fracture). Dr. Weiland recommended[2] the Plaintiff be transferred for an immediate orthopaedic consultation (Plaintiff alleges he recommended immediate surgery) because of the seriousness of the Plaintiff's fractures, and because of the unavailability of orthopaedic services at Pike County Memorial Hospital. Defendant Hampton informed Pike County Memorial Hospital that he was not authorizing the Plaintiff's admission to the hospital, and that he declined to follow the recommendation of Dr. Weiland to transfer the Plaintiff to an alternate outside facility. This decision was made early in the morning of August 10, 2002. The Plaintiff was given pain medication, instructions for pain management, and his leg was immobilized in a splint prior to leaving the emergency room. The Plaintiff further alleges that Defendants Hampton and CMS ordered the correctional officers present with the Plaintiff at the hospital to sign a waiver of treatment. Dr. Weiland disagreed with this course of action.[3]

After being treated at the Pike County Memorial Hospital Emergency room, the Plaintiff was returned to the CMS Transitional Care Unit (TCU). The Plaintiff alleges that he remained in the TCU for four days, where he was held without treatment, and where he was in excruciating

---

[2]The Plaintiff says "ordered," whereas the Defendants' say "requested."

[3]Whether one of the correctional officers signed a waiver of treatment form is unclear from the evidence provided. A copy of that waiver was not provided by the parties. Regardless of whether such a form was signed, the analysis with regards to Dr. Hampton's treatment decisions remains the same.

3

pain. The Defendants deny that the Plaintiff was not treated during this time; they state that his vital signs and his medications were monitored regularly, and that he received continuous medical care and treatment for his right leg, until he was transferred for surgery; this is supported by the nurses' notes from the TCU. On August 12, 2002, the Plaintiff was transferred to Capital Regional Medical Center, in Jefferson City, Missouri, for surgery on his right leg. The Plaintiff received this treatment from Dr. Turnbaugh, a specialist in orthopaedic care. The Plaintiff further alleges that as a result of the delay, the three days he remained in the TCU, he suffered permanent physical, emotional, neurological, muscular, mental and psychological disabilities.

## II. MOTION TO STRIKE

Before addressing the cross Motions for Summary Judgment, the Court will address Defendant's Motion to Strike, to determine what evidence the court will consider in responding to the Summary Judgment motions. The Defendant has filed a motion to strike the Plaintiff's affidavit, as well as the affidavits of Olen Robinson and James Bailey, that were submitted in support of Plaintiff's motion for Summary Judgment. *Def. Motion to Strike* at 5. In support of, or in opposition to a motion for summary judgment a party may submit affidavits in support of their position. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). Fed. R. Civ. P. 56(e) provides the form that these affidavits are to take. It states, in pertinent part, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). The district court and the Eighth Circuit have been uniform in applying this rule; upholding a motion to strike where the information contained within an affidavit is based on "information and belief and not on personal knowledge." *Great Western Sugar Co. v. Mrs. Allison's Cookie Co.,* 563 F.Supp. 430, 432

4

(E.D.Mo., 1973). *See also Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.3d 1361, 1367 (8th Cir. 1983) ("information and belief is insufficient"). The Court will disregard any affidavits that are not based on personal knowledge in deciding a motion for summary judgment. *Baker v. Veneman*, 256 F.Supp.2d 999, 1005 (E.D.Mo., 2003), *see also Neff v. World Pub. Co.*, 349 F.2d 235, 253 (8th Cir. 1965). An older Eighth Circuit opinion specifically states that "mere conclusions of law or restatements of allegations of the pleadings are not sufficient." *Walling v. Fairmont Creamery Co.*, 139 F.2d 318, 322 (8th Cir. 1943).

In the present case the Plaintiff provided three affidavits in support of its motion for summary judgment. Many of the statements in the affidavits submitted on behalf of Olen Robinson and James Bailey are clearly not based upon personal knowledge, but rather restate the allegations in the pleadings and information acquired through discovery.[4] An additional concern with these affidavits, that is not raised by the Defendants, is that the language in the two affidavits is identical. In an Eighth Circuit decision, the court found that the district court erred in its grant of summary judgment because its decision relied entirely upon affidavits of the "boilerplate, conclusory variety." *Miller v. Dept. of Agriculture*, 13 F.3d 260, 263 (8th Cir. 1993) (The affidavits were filed in support of the government's denial of a request for disclosures under the Freedom of Information Act). In *Miller*, the court was concerned that such boilerplate affidavits should not stand as a universal bar against plaintiff's request; the affidavits were being used to support a finding in favor of the defendant against the Plaintiff on Defendant's motion for

---

[4]For example, paragraph three of James Bailey's deposition states "based upon information and belief as stated in their depositions, prior to the incident in question, Defendants Tanner and Patton had both received training from the CMS defendant regarding the proper standard of care, procedure and protocol for splinting and stabilizing a broken leg . . .." This is clearly not information that would be in the personal knowledge of an inmate in the Northeast Correctional Center; in fact it specifically states "by information and belief," which is insufficient.

5

summary judgment. *Id.* However, that case is distinguishable, as here the affidavits are offered in opposition to Defendant's motion for summary judgment, as well as in support of Plaintiff's motion for summary judgment. The court does not indicate that such affidavits should be given no weight, but rather, that they should not provide the sole basis for a summary judgment ruling, that dismisses the plaintiff's claim. *Id.*

Recognizing that some of the information contained in the affidavits of Olen Robinson and James Bailey is not based upon personal knowledge, the Court will strike those portions of the affidavits. However, the Court will not strike the entire affidavits of Olen Robinson and James Bailey, as limited portions of the affidavits may be based upon personal knowledge, and therefore are entitled to be considered. *Baker*, 256 F.Supp.2d at 1005 ("**To the extent** affidavits are not based upon personal knowledge, they will not be considered by the Court." (emphasis added)). Furthermore, this Court finds that evidence the affidavits are boilerplate, does not require them to be given no value. This Court will consider the portions of the affidavits which are based on personal knowledge in deciding Plaintiff's and Defendants' motion for Summary Judgment.

The affidavit filed by the Plaintiff does not appear to contain any evidence that would not be admissible at trial, and the Defendants have failed to point to specific portions of Plaintiff's affidavit that they consider objectionable. Rather, the Defendant states generally that the affidavits are not based upon personal knowledge and are not based on admissible evidence. *Def. Mot. to Strike*, at ¶4. As the Court does not find objection with Plaintiff's own affidavit, it will be considered in deciding Plaintiff's and Defendants' motions for summary judgment.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S.

7

at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

### B. DISCUSSION

#### 1. EIGHTH AMENDMENT CLAIM

Plaintiff brings suit pursuant to 42 U.S.C. § 1983[5] claiming that Defendants violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment. In *Estelle v. Gamble*, the Supreme Court ruled that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures." 429 U.S. 97, 102-03 (1976) (internal citations and quotations omitted); see also *Wickham v. Dowd*, 914 F.2d 1111, 1119 (8th Cir. 1990). For this reason "[t]he government is obligated to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so,

---

[5] 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

8

those needs will not be met." *Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir. 2002) (quoting *Estelle*, 429 U.S. at 103). It is a violation of the Eighth Amendment to deny medical care for serious medical needs when the denial results in pain and suffering that serves no penological purpose. *Estelle*, 429 U.S. at 103. A serious medical need exists when a person "has been diagnosed by a physician as requiring treatment or [the need] is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)).

Specifically, in order to find an Eighth Amendment violation, the inmate has the burden of proving both a subjective and objective component. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993). First, the prison official must deprive the inmate of a right that is objectively "sufficiently serious" to rise to the level of a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotations omitted). Second, the "prison official must have a sufficiently culpable state of mind." *Id.* (internal quotations omitted). "[T]hat [subjective] state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* Deliberate indifference exists when the prison official "knew of, yet disregarded, an excessive risk to his health." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997)).

The requirements for an Eighth Amendment claim can be satisfied by either the denial of access to medical care or the interference with proscribed treatment. Deliberate indifference can be present if a prison physician chooses "an easier and less efficacious course of treatment." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). Similarly, cursory treatment of a serious medical condition may also constitute deliberate indifference. *Starbeck v. Linn County Jail*, 871

9

F.Supp. 1129, 1145 (N.D. Iowa 1994). However, just because the inmate's medical treatment may be considered "conservative," does not necessarily mean that the physician has acted with deliberate indifference. *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994). Similarly, "[m]ere negligence is not sufficient to support a cause of action[.]" *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993). Indeed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 97 U.S. at 106. Treatment will only be considered inadequate if it is "grossly inappropriate or evidenced intentional maltreatment." *Dulany*, 132 F.3d at 1241.

Certain decisions are made using independent medical judgment. *See Estelle*, 97 U.S. at 107. Federal courts are reluctant to second guess treatment decisions made by competent physicians. *Bouchard v. Magnusson*, 715 F.Supp. 1146, 1149 (D. Me. 1989). "Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs." *Davis*, 992 F.2d at 153. In order for the Plaintiff to succeed, he must "demonstrate (1) that [he] suffered objectively serious medical needs, and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Defendant's motion for summary judgment will be granted if Plaintiff fails to provide support for each essential element. *Celotex*, 477 U.S. at 322-23.

### a. DEFENDANTS TANNER AND PATTON

Plaintiff alleges that his Eighth Amendment rights were violated when Defendants Tanner and Patton failed to use a leg splint before moving the Plaintiff from the softball field to the infirmary, and again failed to splint the leg upon Defendant Hampton's instructions that they do so. *Pl. Second Amended Complaint*, at ¶23, *see also Plaintiff's Suggestions in Support of*

10

*Plaintiff's Motion for Summary Judgment*, at p. 5. The Defendants agree that Defendants Patton and Tanner failed to use a leg splint, but claim that the leg was immobilized by Defendant Patton before moving the Plaintiff from the softball field. *Defendants Memorandum in Support of Defendants Motion for Summary Judgment*, at p. 4, *see also Depo. of Wanda Patton*, p.21, line 15-24. The Plaintiff does not remember this action by Defendant Patton, he testified in his deposition that nobody stabilized or immobilized his leg before moving him to the back board, or during transportation. *Deposition of Bryan Croft*, p.25, line 7-22. There is further evidence provided by Defendant Hampton, who was contacted as the on-call physician, that he instructed Defendants Patton and Tanner to splint the leg. *Deposition of Defendant Hampton*, p. 14, line 10-12. The contradicting testimony of the Plaintiff and the Defendant Patton clearly creates an issue of fact; the Plaintiff has provided evidence that Defendants Patton and Tanner failed to follow the instructions of Defendant Hampton, as well as providing evidence that CMS protocol required immobilizing and splinting the leg. The question remaining is whether this issue of fact is material, that is, whether it gives rise to a claim of deliberate indifference under the Eighth Amendment.

The two prong test requires that the Court first look at whether the objective requirement of a sufficiently serious medical need has been met. This requirement has been described by the Court as whether the "deprivation" was sufficiently serious to invoke the Eighth Amendment of the Constitution. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), *see also Farmer*, 511 U.S. at 834. The Eighth Circuit has described a serious medical need as one that "has been diagnosed by a physician as requiring treatment or [one that] is so obvious that even a lay person would easily recognize the need for a doctor's attention". *Cambros*, 73 F.3d at 76. As in this case, where an injury is visible, no expert testimony is necessary to show the serious medical need, or that a

serious risk of harm existed. *Robinson*, 292 F.3d at 564. As even a lay person would recognize a broken leg as requiring medical attention this Court finds that the objective requirement, a serious medical need, has been met. *See e.g. Thorbes v. Bahl*, 180 Fed.Appx. 603, 603 (8th Cir. 2006) (the court found a serious medical need existed where the inmate had fractured his jaw).

Once this objective determination has been made, then the Court will look at whether there was a sufficiently culpable state of mind to raise to the level of punishment. *Id*. at 297-98 ("a prisoner advancing such a claim, must, at a minimum, allege 'deliberate indifference' to his 'serious' medical need.. . . Did the officials act with a sufficiently culpable state of mind?"), *See also Robinson*, 292 F.3d at 564 ("the prison official know of and disregarded [the] risk"). The Eighth Circuit has required a showing of "a highly culpable state of mind approaching actual intent." *Choate*, 7 F.3d at 1374. This has further been defined as requiring a showing that Defendants Tanner and Patton knew of, and yet disregarded, a serious risk to Plaintiff by moving him without stabilizing his leg, or by failing to follow Dr. Hampton's order. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("To prove deliberate indifference, Keeper [plaintiff] had to show that King and Gammon [defendants] knew of yet disregarded, an excessive risk to his health). In the present case both Defendant Tanner and Patton testified that they were aware that Plaintiff had suffered what appeared to be a broken leg, and that the protocol required stabilizing the leg before moving. There is contradicting testimony as to whether Defendants followed this protocol. Even assuming that Defendants Tanner and Patton knew of Plaintiff's broken leg, failed to splint or immobilize the leg prior to transporting the Plaintiff, and failed to splint the leg upon returning to the infirmary, there is still insufficient evidence to show deliberate indifference.

As cited above, negligence or medical malpractice does not rise to the level of a Constitutional violation. *Estelle*, 97 U.S. at 106. Defendant Tanner and Patton's actions do not

evidence intentional maltreatment of the Plaintiff. *Dulany*, 132 F.3d at 1241. The Plaintiff testified and provided affidavits stating that Defendants Tanner and Patton attempted to pick him up by lifting under his arms and knees in order to place him on the back board, at which point he screamed, and they immediately placed him back on the ground. This does not suggest intentional maltreatment, but rather negligence in failing to splint or stabilize the leg prior to moving the Plaintiff. Furthermore, after the Plaintiff was returned to the Infirmary, the evidence is clear that Defendants Tanner and Patton attempted to make the Plaintiff comfortable, gave him non-narcotic pain medication, and called the on-call physician. Even assuming Defendants Tanner and Patton acted as Plaintiff alleges, this is insufficient for a finding of deliberate indifference, and therefore they are entitled to summary judgment on Count I of the Plaintiff's Second Amended Complaint.

### b. DEFENDANT HAMPTON

The same standard as stated above applies to Defendant Hampton. The Plaintiff must "demonstrate (1) that [he] suffered objectively serious medical needs, and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany*, 132 F.3d at 1239 (citing *Coleman*, 114 F.3d at 784). Plaintiff alleges that Defendant Hampton deliberately disregarded a need for emergency orthopedic surgery as recommended by Dr. Weiland, the emergency room physician at Pike County Memorial Hospital. Defendant Hampton, after speaking with Dr. Weiland or a correctional officer who was recounting Dr. Weiland's recommendations,[6] ordered the Plaintiff be returned to the Transitional Care Unit. He further ordered that the Plaintiff be monitored, and provided pain mediation, until he could be seen by Dr.

---

[6] Dr. Weiland testified in his deposition to speaking directly with Defendant Hampton. Defendant Hampton could not recall with whom he spoke.

Turnbaugh, an orthopedic specialist. The Plaintiff was seen by Dr. Turnbaugh, at Capitol Regional Medical Center, on August 12, 2002, and underwent surgery on August 13, 2002.

The first prong of the test for an Eighth Amendment violation requires a showing that there was a serious medical need. As numerous Eighth Circuit opinions have held, when an injury is such that even a lay person could recognize the need for medical attention, then a court may conclude that there was a serious medical need. *Camberos*, 73 F.3d at 176 (quoting *Johnson,* 953 F.2d at 351). In the present case the Plaintiff clearly had a need for medical attention for his broken leg. Additionally, an emergency room physician had diagnosed the Plaintiff as requiring an orthopedic consultation and possibly orthopedic surgery. This Court finds that Plaintiff had a serious medical need.

The second prong requires a showing of deliberate indifference of that serious medical need; therefore this Court must determine whether the Plaintiff has provided sufficient evidence to support a jury finding of deliberate indifference. Again, as stated above, mere negligence is not sufficient to raise to the level of a constitutional violation. *Dulany*, 132 F.3d at 1239 ("mere negligence or malpractice, however, are insufficient to rise to a constitutional violation."); *See accord Kitchen v. Miller*, 343 F.Supp.2d 820, 823 (E.D.Mo. 2004). This does not mean that a medical professional's decided course of action can never constitute deliberate indifference. To the contrary, "[g]rossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." *Smith*, 919 F.2d at 93; *see accord Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("indifference can be manifested by prison doctors taking the easier and less efficacious route in treating an inmate.").

14

There is sufficient evidence to support a finding that Defendant Hampton knew of Plaintiff's serious medical need, and that he decided to transfer the Plaintiff back to the TCU, against the recommendation of the emergency room physician. Plaintiff has alleged, and provided evidence in support of the allegation, that Defendant Hampton failed to send Plaintiff for an immediate consultation because it was easier and cheaper to send the Plaintiff for an office visit on the next business day with an orthopedic consultant that contracted with CMS, than to seek an immediate transfer to another facility with an orthopedic consultant available. Defendant Hampton has provided evidence that his actions were the result of a reasoned medical opinion that immediate surgery was not necessary, and that there were security concerns about transferring the Defendant immediately.

Although it is tempting to question the adequacy of waiting three days before consulting an orthopedic specialist for a badly fractured leg, it is not this Court's role to second guess treatment decisions of competent physicians. *Bouchard*, 715 F.Supp. at 1149. Both Defendant Hampton and Dr. Weiland testified that the Plaintiff's pulse was strong, he was able to wiggle his toes, and his foot was pink and warm to the touch, all indicating that there was no nerve damage. Defendant Hampton made a decision based upon this information. Although his decision differed from Dr. Weiland's recommendation, there is no evidence that he acted with a conscious disregard of an excessive risk to the Plaintiff's health. *Keeper*, 130 F.3d at 314. Disagreement with a medical judgment is not sufficient. Therefore Defendant Hampton is entitled to Summary Judgment on Count II of Plaintiff's Second Amended Complaint.

### c. DEFENDANT CMS

Plaintiff also brings suit against Correctional Medical Services (CMS). The Plaintiff alleges that CMS had a policy of denying emergency medical treatment in favor of the cheaper

alternative of waiting until an ordinary appointment could be made with a contracted specialist. Even if this evidence is considered in a light most favorable to the Plaintiff, this contention cannot be supported. The only evidence provided by the Plaintiff is a statement by Defendant Hampton, at his deposition, that "by standard procedure he [the plaintiff] would have been taken back to the . . . transitional care unit at Bowling Green, Northeastern, and would have been maintained there on pain relief and immobilization until the next business day . . . at which point . . . he would have had an appointment scheduled usually that same day with Dr. Turnbaugh, who is our orthopedic consultant we use frequently." This does not establish a pattern or practice of constitutional violations, sufficient to hold CMS liable under §1983, but rather that procedure in this case was followed whereby Plaintiff be released to the care of CMS personnel until he could be seen by a contracted orthopedic consultant.

The Plaintiff cites a number of cases in its summary judgment motion which address the question of supervisor liability under § 1983. Although Plaintiff accurately cites the law as stated in those cases, the issue of supervisor liability is not relevant to the liability of Defendant CMS, as it is not the actions of a specific supervisor that the Plaintiff is accusing of being unconstitutional, but rather the policy that CMS put in place. Therefore, any discussion of respondeat superior and supervisor liability is unnecessary.

The correct basis for Plaintiff's claims against CMS is that the policies, upon which Defendant Hampton relied in making his decision, are unconstitutional. The Supreme Court in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), held that when execution of a government's policy or custom inflicts a constitutional deprivation, then such action is prohibited by § 1983. Even without formal approval through official decision making channels, any "person . . . may be sued for constitutional deprivations visited pursuant to

16

governmental custom." *Id*. Assuming, without deciding, that the Plaintiff is correct that CMS is responsible for the policy which governs the actions of the medical employees, the Plaintiff is still unsuccessful in presenting any evidence of a material issue of fact as to Defendant CMS's liability. Plaintiff must show that there is "a pattern of persistent and widespread unconstitutional practices which become so permanent and well settled as to have the effect and force of law." *Jane Doe A By and Through Jane Doe B v. Special School District of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990) (internal quotations omitted). The only evidence provided by the Plaintiff is a statement by Defendant Hampton that he ordered the Plaintiff returned to the TCU pursuant to the department's policy. He has provided no further evidence of a widespread pattern of unconstitutional behavior resulting from this policy. This policy seems to suggest that the provider of correctional medical services should evaluate the severity of the prisoner's injury before deciding to have the prisoner treated immediately, which is expensive and poses potential security risks. This is especially true when a consultation on the next business day, with a contracted specialist, will be just as effective. Plaintiff's own experience under the policy did not result in a constitutional violation, and he provided no other evidence of a pattern or practice of unconstitutional behavior resulting from this policy. Therefore, summary Judgment is appropriate in favor of Defendant CMS.

### 2. FOURTEENTH AMENDMENT CLAIM

The Plaintiff makes similar allegations against the Defendants under the Fourteenth Amendment of the Constitution; that Defendants deliberate indifference was sufficient to violate Plaintiff's right to due process of law. The Plaintiff cites *Neal v. St. Louis County Bd. Of Police Commissioners*, which states "in situations where a state actor is afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, the chosen

action will be deemed 'conscience shocking' if the action was taken with 'deliberate indifference.' 217 F.3d 955, 958 (8th Cir. 2000); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) (The court applies the deliberate indifference doctrine to individuals who are jailed and awaiting trial under the due process clause of the Fourteenth Amendment.).These cases state the same standard for deliberate indifference as used under the Eighth Amendment, and is applied only when the Eighth Amendment is inapplicable because the claimant is not a prison inmate, but rather a pretrial detainee. Where the allegation of deliberate indifference is raised by a prison inmate, and not a pretrial detainee, the correct analysis is under the Eighth Amendment, and the Fourteenth Amendment affords no additional protection. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The Plaintiff alleges no alternative basis for its due process claim and therefore Defendants are also entitled to Summary Judgment on the Plaintiff's Fourteenth Amendment claims.

## IV. CONCLUSION

Plaintiff has failed to provide sufficient evidence on which a jury could find in its favor against Defendants Tanner, Patton, Hampton and CMS. It is clear that the Plaintiff suffered a painful leg injury, and in many respects the treatment he received may have risen to the level of negligence. However, the Supreme Court and the Eighth Circuit are clear that negligence or malpractice is not sufficient to state a claim under the Eighth Amendment. "Cruel and unusual punishment" is a high standard that requires deliberate indifference to a serious medical need. That standard was not reached here. The Supreme Court is equally clear that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento*, 523 U.S. at 849. This Court holds that there are no genuine issues of material fact and the Defendants

18

are entitled to judgment as a matter of law on Counts I and II of Plaintiff's Second Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [doc. #74] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [doc. #77] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike [doc. #80] is **GRANTED IN PART** and **DENIED IN PART**.

This <u>27th</u> Day of September, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE